UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ARROWOOD INDEMNITYCOMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BARBARA THOMPSON, as personal representative of the Estate of Charles McCarthy; C.C., C.L.C., S.C., G.F., C.H., R.K., C.C.M., D.A.M., R.N., J.R., B.A.T., B.L.T., and S.W.,<br><br>Defendants. | CASE NO. 3:22-cv-06016<br><br>ORDER DENYING ARROWOOD INDEMNITY COMPANY'S MOTION TO DISQUALIFY COUNSEL |

## 1. INTRODUCTION

This is a declaratory judgment action. Plaintiff Arrowood Indemnity Company alleges it has no duty to defend or indemnify Defendant Charles McCarthy and his estate against abuse claims by the Individual Defendants or to pay a settlement that the defendants reached resolving their underlying claims in state court. Arrowood moves to disqualify its opposing counsel—Darrell Cochran and his firm, Pfau Cochran Vertetis Amala PLLC (PCVA)—claiming Cochran

"orchestrat[ed]" the underlying settlement, and is thus a "necessary witness and his documents are vital evidence in this case." Dkt. No. 46 at 6, 10.

Motions to disqualify are a motion of last resort, and courts are reluctant to disqualify counsel unless absolutely necessary. Arrowood has not made a compelling showing of need for Cochran's *trial testimony,* and its motion is premature in any event. Accordingly, the Court DENIES Arrowood's Motion to Disqualify without prejudice.

## 2. BACKGROUND

In the 1980s and 1990s, Defendants C.C., C.L.C., S.C., G.F., C.H., R.K., C.C.M., D.A.M., R.N., J.R., B.A.T., B.L.T., and S.W. ("Individual Defendants") were residents at the Kiwanis Vocational Home.[1] They filed lawsuits in state court against Defendant Charles McCarthy, who acted as the Home's executive director, and others, alleging various forms of neglect and abuse. Kiwanis had a liability insurance policy through Royal Insurance Company; Arrowood is Royal's successor by way of merger. Dkt. No. 20, ¶¶ 8, 54.

---

[1] With limited exceptions, parties must use their real names during litigation. *See* Fed. R. Civ. P. 10(a). The Ninth Circuit "allow[s] parties to use pseudonyms in the 'unusual case' when nondisclosure of the party's identity 'is necessary ... to protect a person from harassment, injury, ridicule or personal embarrassment.'" *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067–68 (9th Cir. 2000) (quoting *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)). Substituting a pseudonym or initials for a party name is appropriate when dealing with sexual abuse claims, "especially where the [party] was a minor when the assault allegedly occurred." *N.S. by & through Marble v. Rockett*, No. 3:16-CV-2171-AC, 2017 WL 1365223, at *2 (D. Or. Apr. 10, 2017). Because the Individual Defendants allege sexual abuse claims, among other forms of abuse, that occurred when they were children, the Court finds that it is appropriate to refer to them by initials to protect their privacy.

ORDER DENYING ARROWooD INDEMNITY COMPANY's MOTION TO DISQUALIFY COUNSEL - 2

McCarthy tendered the defense and indemnity for the underlying lawsuit to Arrowood on May 15, 2019, which Arrowood accepted under a reservation of rights on March 6, 2020. *Id.* ¶ 63. McCarthy died in 2020, and Defendant Barbara Thompson became the personal representative for his estate in 2021. *Id.* ¶ 16. Arrowood states that it accepted from McCarthy and Thompson all subsequent tenders of the additional underlying lawsuits and defended McCarthy and his estate in those lawsuits. *Id.*¶ ¶ 64, 66.

Darrell Cochran and PCVA represented the Individual Defendants in the underlying lawsuits. Dkt. No. 46 at 5. In October 2022, the Individual Defendants entered into a settlement agreement, assignment of rights, and a stipulated judgment and covenant not to execute with Defendant Thompson on behalf of McCarthy's estate on the underlying lawsuits. Dkt. No. 20 at ¶ 68. Arrowood alleges that "Thompson, as personal representative of [McCarthy's estate], purported to assign to plaintiff in the Underlying Lawsuits, including Individual Defendants, the right to collect the settlement from any available insurance coverage, potentially including the Royal policy." *Id.* ¶ 71. Arrowood alleges Thompson's settlement on behalf of McCarthy's estate was "materially in excess of the settlement amounts in dozens of prior settlements in other actions entered into by other plaintiffs (most of whom were represented by the same counsel who now represents Individuals), the Kiwanis entities, Thompson and McCarthy, and the other settling parties, regarding alleged abuse at KVH." *Id.* ¶ 74.

Arrowood further alleges that Cochran, specifically, "was deeply and intimately involved in every aspect of the Underlying Lawsuits and similar abuse

ORDER DENYING ARROWooD INDEMNITY COMPANY's MOTION TO DISQUALIFY COUNSEL - 3

lawsuits, including issuing many dozens of written and oral settlement communications, demands, threats, and assaults against insurers, including Arrowood." Dkt. No. 46 at 6. Arrowood also contends that the settlement agreement between McCarthy's estate and the Individual Defendants was the "brainchild of Cochran," and that he "negotiated it behind Arrowwood's back without notice…." *Id*. at 5. According to Arrowood, Cochran negotiated a Covenant Judgment Settlement of $65,130,000 to be entered against Thompson without trial, as well as the assignment of rights of the Royal policy to the Individual Defendants. *Id*. at 5.

The Honorable Gretchen Leanderson of the Superior Court of Pierce County, Washington held a hearing to determine the reasonableness of the Covenant Judgement Settlement amount. After holding a hearing, Judge Leanderson entered findings of fact and conclusions of law that the amount was unreasonable and reduced the aggregate amount to $21,251,250. *Id*. at 6. The Individual Defendants appealed Judge Leanderson's order, and the matter is pending before the Washington Court of Appeals. Dkt. No. 50 at 3-4, 11.

Arrowood brings this lawsuit "to ascertain its rights and duties under the Royal policy" in light of Individual Defendants' covenant with McCarthy's estate. *See* Dkt. No. 20 ¶ 80. Arrowood alleges a breach of contract claim and seeks declaratory judgment against Defendants on several issues. *See id*. Relevant here, in Count V, Arrowood seeks a declaratory judgment that "Arrowood has acted in good faith at all times relevant to the underlying lawsuits." *Id*. at 22.

Arrowood argues Cochran's involvement in the underlying lawsuits and in negotiating the settlement agreement between Defendant McCarthy's estate and

ORDER DENYING ARROWooD INDEMNITY COMPANY's MOTION TO DISQUALIFY COUNSEL - 4

Individual Defendants makes him "a necessary witness" in this action. Dkt. No. 46 at 6. Because Cochran refuses to voluntarily withdraw as counsel, Arrowood brings this motion to disqualify him under Washington Rule of Professional Conduct 3.7(a). *Id.*

## 3. ANALYSIS

### 3.1 The Court will take notice that judicial proceedings have occurred in the underlying litigation, but not of "facts" found in state court orders.

Arrowood asks the Court to take judicial notice of Judge Leanderson's "Order Re Reasonableness Of Covenant Judgement Settlement" and "Findings of Fact And Conclusions Of Law Re Reasonableness Of Covenant Judgment Settlement." Dkt. Nos. 48, 48-1, 48-2.

Rule 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). For example, a court may take judicial notice of "records in other cases" and courts. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). But "[f]actual findings in one case ordinarily are not admissible for their truth in another case through judicial notice." *Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003), overruled on other grounds by *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014). Thus, "[d]ocuments in the public record may be judicially noticed to show, for example, that a judicial proceeding occurred or that a document was filed in another case, but a court may not take judicial notice of findings of facts from

another case." *Spitzer v. Aljoe*, No. 13-CV-05442-MEJ, 2016 WL 3275148, at *1 (N.D. Cal. June 15, 2016)

Arrowood doesn't limit its request to merely notice that judicial proceedings occurred before Judge Leanderson; rather, it seeks notice of "records and *facts*" contained in her orders. Dkt. No. 48 at 2. Those facts, however, are disputed and the subject of appeal. They are not entitled to judicial notice under Rule 201. *See Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1125 (C.D. Cal. 2015) ("[T]he Court 'can only take judicial notice of the existence of those matters of public record[,] . . . not of the veracity of the arguments and disputed facts contained therein.'") (citing *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004)).

Thus, the Court will take judicial notice that proceedings occurred before Judge Leanderson and that she issued two orders about the reasonableness of the covenant judgment settlement, but the Court will not take notice of the factual findings contained within the orders.

**3.2   Disqualification under RPC 3.7.**

When there is a serious conflict of interest or some other compelling justification, attorneys are justified in moving to disqualify opposing counsel. But sometimes a motion to disqualify is merely a tactical device deployed to delay the proceedings or to remove a dangerously competent adversary. Motions to disqualify are thus "subjected to 'particularly strict judicial scrutiny'" to limit gamesmanship. *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985)

(internal citation omitted). "[D]isqualification is considered to be a drastic measure that is generally disfavored and imposed only when absolutely necessary.'" *Shawarma Stackz LLC v. Jwad*, No. 21-CV-01263-BAS-BGS, 2021 WL 5830625, at *3 (S.D. Cal. Dec. 8, 2021) (quoting *Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, No. 08-CV-2307-H (WVG), 2009 WL 10671353, at *2 (S.D. Cal. Dec. 8, 2009)).

Federal courts apply state law in determining matters of disqualification. *Reading Int'l, Inc. v. Malulani Grp., Ltd.*, 814 F.3d 1046, 1049 (9th Cir. 2016). Here, Arrowood argues that Cochran and PCVA should be disqualified under Washington Rule of Professional Conduct 3.7, which provides the following:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case;
>
> (3) disqualification of the lawyer would work substantial hardship on the client; or
>
> (4) the lawyer has been called by the opposing party and the court rules that the lawyer may continue to act as an advocate.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

RPC 3.7(a)-(b).

"When interpreting these provisions, courts have been reluctant to disqualify an attorney absent compelling circumstances." *Pub. Util. Dist. No. 1 of Klickitat Cnty. v. Int'l Ins. Co.*, 881 P.2d 1020, 1033 (Wash. 1994). Usually, this requires a

showing that the attorney "'will give evidence material to the determination of the issues being litigated, that the evidence is unobtainable elsewhere, and that the testimony is or may be prejudicial to the testifying attorney's client.'" *Id.* (quoting *Cottonwood Estates, Inc. v. Paradise Builders, Inc.*, 624 P.2d 296 (Ariz. 1981)).

Arrowood claims Cochran (1) is a material witness on "multiple issues," (2) his evidence cannot be obtained elsewhere, and (3) that Arrowood will be "severely prejudiced if Cochran is counsel for Defendants." Dkt. No. 46 at 15. Arrowood's arguments for the disqualification of Pfau and Cochran appears to revolve around its request for this Court to enter declaratory judgment that it acted in good faith to Defendant McCarthy and his estate. *See* Dkt. No. 46 at 8.

### 3.2.1   Arrowood's requested relief is inconsistent with the terms of RPC 3.7.

As an initial matter, the Court agrees with the Individual Defendants that Arrowood's motion is premature. Dkt. No. 50 at 6. As numerous courts have held in analyzing the rule, "'the plain language of Washington RPC 3.7(a) is unequivocally clear in only prohibiting attorneys from acting as an advocate *at trial*.'" *U.S. Fire Ins. Co. v. Icicle Seafoods, Inc.*, 523 F. Supp. 3d 1262, 1267 (W.D. Wash. 2021) (emphasis in original) (quoting *Am. Safety Cas. Ins. Co. v. Happy Acres Enter. Co.*, 2017 WL 279616, at *3 (W.D. Wash. Jan. 20, 2017)). Arrowood acknowledges that, by design, it moves for disqualification in the early stages of this case—in other words, well before trial—but "'RPC 3.7 does not authorize such a broad disqualification.'" *Id.* (quoting *Am. Safety Cas. Ins. Co.*, 2017 WL 279616, at *3). Arrowood argues otherwise, relying on out-of-state authority, but the cases cited are

ORDER DENYING ARROWooD INDEMNITY COMPANY's MOTION TO DISQUALIFY COUNSEL - 8

neither controlling nor persuasive because disqualification in this case is a matter of Washington law. *See Reading Int'l, Inc.,* 814 F.3d at 1049.

The Court also agrees that Arrowood has provided no separate legal or factual basis to exclude Cochran's law firm, PVCA. Arrowood mostly discusses Cochran and PVCA in the conjunctive, imputing Cochran's actions to his firm, but Arrowood offers no reply to the Individual Defendant's argument that RPC 3.7 "expressly allows a lawyer from the same law firm as the lawyer-witness to continue as the client's trial advocate unless precluded from doing so by RPC 1.7 or 1.9." Dkt. No. 50 at 7. So by the plain terms of the Rule, PVCA could continue as trial counsel even if Cochran were disqualified absent a conflict under RPC 1.7 ("a lawyer shall not represent a client if the representation involves a concurrent conflict of interest…") or 1.9 ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client…). Because Arrowood does not argue that PVCA is conflicted out of representing the Individual Defendants under RPC 1.7 or 1.9, disqualification of the firm under RPC 3.7 is not warranted.

### 3.2.2   Even if its motion were not premature, Arrowood fails to show disqualifying Cochran is warranted.

Setting aside the timing of Arrowood's motion, the Court is not persuaded about the merits of Arrowood's motion either. First, Arrowood argues Cochran's testimony is necessary for Arrowood to show that it acted in good faith. *See* Dkt. No. 53 at 2. In order "[t]o succeed on a bad faith claim, the policyholder must show the

insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded." *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (2003) (citation omitted). Arrowood stresses that the "context" and "circumstances" are essential for determining good faith, and here, according to Arrowood, Cochran's testimony is essential as "the most important witness." Dkt. No. 46 at 10. But Arrowood seeks declaratory judgment about its own good faith, not Cochran's. *See* Dkt. No. 20 at 22. Arrowood's reasonableness—not Cochran's—will be the relevant question regarding the reasonableness of any breaches of an insurance contract. *See Smith*, 78 P.3d at 1277. The Court is not convinced that that Cochran can testify to Arrowood's consideration and decisions regarding the underlying lawsuits more aptly than Arrowood itself. *See id*.

Next, even if Cochran had knowledge of facts necessary to Arrowood's defense of a bad faith claim, Arrowood fails to show "[t]here is no reasonable alternative to calling Cochran as a witness." Dkt. No. 46 at 15. Arrowood has conceded that it possesses communications from Cochran and that "his documents are testifying for him." *Id*. Arrowood further states the Individual Defendants "are not lawyers," so "[t]hey will not be able to meaningfully testify regarding the highly technical matters such as valuation of their claims, settlement negotiations, and settlement strategy." *Id*.

Again, the question of reasonableness in a bad faith claim is to the insurer's—not insured's—reasonableness. Assuming that Arrowood does not seek privileged testimony or materials from Cochran regarding his "settlement strategy," Arrowood fails to demonstrate that this information could not be learned from other

ORDER DENYING ARROWooD INDEMNITY COMPANY's MOTION TO DISQUALIFY COUNSEL - 10

witnesses. For example, if Arrowood believes that it is necessary for someone with intimate knowledge of the "highly technical matters such as valuation of their claims, settlement negotiations, and settlement strategy," it is free to call its own agents that were involved in the settlements of the underlying lawsuits with the Individual Defendants. Dkt. No. 46 at 15.

Finally, the Court does not find evidence that Cochran's representation of the Individual Defendants will prejudice Arrowood at this point of litigation. Arrowood's argument that it will be prejudiced assumes that Cochran will try this matter, leading the "jury [to] be confused by his overlapping roles as a central participant in underlying events and as an advocate trying to persuade the jury that Arrowood failed to negotiate with him in good faith." Dkt. No. 46 at 15. This could be the case, ultimately, but at this time Arrowood's request is based on speculation as to how this case will unfold, including the nature of any bad faith claim that ultimately materializes, and speculation as to who will try this case on behalf of the Individual Defendants and what evidence and witnesses will be admissible. As the Court has already noted, Arrowood's request is premature.

### 3.3   Arrowood points to no evidence that the Individual Defendants are prejudiced by Cochran's representation.

Arrowood also argues that the Individual Defendants would be prejudiced by Cochran's representation. RPC 1.7 states that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." Arrowood argues Cochran's "settlement strategy for the Underlying Lawsuits involved a clandestine settlement reached over just a few days to avoid input from Arrowood . . . and the

ORDER DENYING ARROWooD INDEMNITY COMPANY's MOTION TO DISQUALIFY COUNSEL - 11

proposed settlement values lacked a reasonable basis" as determined by the state trial court." Dkt. No. 46 at 15. Arrowood does not articulate exactly how Cochran's conduct in the underlying settlement—particularly, conduct that lead to settlement for a significant sum that was reduced by the state trial court, not Cochran—would be prejudicial to Individual Defendants. *See* Dkt. No. 46 at 11. Likewise, on this record, the Court does not believe that Cochran's representation of the Individual Defendants will create an "adverse effect" on their representation, especially considering the Individual Defendants are also represented by Cochran's firm and Gordon Tilden Thomas Cordell. *See id.* at 15-16.

## 4. CONCLUSION

As the case develops and if circumstances change, Arrowood may renew its motion to disqualify, but the Court reiterates to the parties that "the motion to disqualify [must] not be used as a strategic litigation tactic." *U.S. for Use & Benefit of Lord Elec. Co. v. Titan Pac. Const. Corp.*, 637 F. Supp. 1556, 1562 (W.D. Wash. 1986) (citation omitted).

Accordingly, Arrowood's motion is DENIED without prejudice.

It is so ORDERED.

Dated this 10th day of January, 2024.

Jamal N. Whitehead
United States District Judge